This case is Redbox Automated Retail, LLC v. Ill. Department of Revenue at A.L. 518-0489. Counsel Redman, you may proceed. Good afternoon and may it please the court, counsel. My name is Greg Mordock and I represent the petitioner Redbox Automated Retail, LLC. We're here because Redbox is owed $1,389,513 as a tax credit from the Department of Revenue. Both Redbox and the department agree on that number. The department has admitted that but for the statute of limitations found in the Use Tax Act, it would refund Redbox that amount of money. So the sole issue before this court is whether the statute of limitation bars the refund of roughly $1,389 million to Redbox. It does not for two explicit reasons. First, the tax paid in this case was the result of an audit that was conducted for the 2007 to 2010 tax period that resulted in the department issuing a EDA 105-R form that stated an additional tax liability for Redbox of $233,307 as a result of the audit. Redbox paid that amount on February 28, 2013. It's admitted that Redbox should have had a refund as a result of that audit of $1,389 million. So on February 28, 2013, Redbox overpaid its taxes by roughly $1.6 million. On February 17, 2016, within the three-year statute of limitations period provided for in the Use Tax Act, Redbox filed a claim for credit for that $1.6 million. It was well within the three-year statute of limitations and it should be granted that refund in full. The department granted it as to the $233,000 but denied it to the $1,389 million amount. Why did they refund the amount paid and not the rest or, you know, I mean, the argument is statute of limitations, right? That's correct. They really kicked in or it was extended to July of 2013 and this was beyond that. That's correct. So the department in denying the $1.389 million is saying that that's barred by the statute of limitations because it was not paid on February 28 of 2013. However, that the code contains no such restriction as to that they can't issue that full claim for credit. It's the overpayment of taxes that begins the statute of limitations period and that overpayment occurred at the end of the audit, which was February 28 of 2013. The claim for credit in this case was filed February 17 of 2016, within that three years. And Redbox's argument is that if they're going to grant the credit, it should have been granted in full for the $1.6 million that was overpaid. And second, even if the statute, if there is an issue with the statute of limitations, section 22 of the Use Tax Act kicks in because there was a second audit during this period. And section 22 of the Use Tax Act operates outside of the statute of limitations found in section 21 of the Use Tax Act and operates when other audits are occurring and would provide recourse to Redbox to claim this credit, even if the statute of limitations in section 21 had run. So for those two reasons, Redbox should be granted the additional $1.389 million credit. And finally, if the department's position is to be applied in this case, it would be being applied in an unconstitutional manner because it would not be applying credit uniformly. Because in your example, had Redbox underpaid during the first audit by more than the $233,000, it would have been able to utilize more of the credit than they're currently allowing it, than they're currently granting. So Redbox, what it does is it provides DVD disc rentals to consumers at self-automated kiosks. And this issue arose because Redbox licenses those discs. It doesn't purchase them. And so the Department of Redbox agreed Redbox is not subject to use tax on these discs. At the conclusion of the first audit, this issue was not noted. So use tax was paid on those discs for the roughly $1.389 million. During a second audit, the department and taxpayer realized that this use tax should not be being paid on these discs. And during that audit, as claims were going back and forth, Redbox filed a claim for credit for refund during the second audit period for these discs and during the first audit period for these discs. It was granted it in full for the disc in the second audit period and, again, was granted a credit for $233 during the first audit period. Now, there's no dispute that at the end of that first audit period, Redbox's actual tax liability was a credit due it in the amount of $1.389 million. That should have been the result of that audit. So, in other words, they were paying taxes as if they owed sales taxes when they did not owe them. That's correct. They paid use tax on these discs when they should not have. I say set sales into actually use tax. That's correct. And sales tax is common name for the scheme that we give the Use Tax Act and the Retailer's Occupation Tax Act. Those two together provide what's commonly noted as sales tax. But they do have a distinction that is important before the court here today, and that is the fact that use tax is actually paid by the company. So Redbox is actually paying that use tax because it's the one that's purchasing and using the tangible personal property. The Retailer's Occupation Tax is actually collected by the company from the ultimate end user. And so in a Retailer's Occupation Tax Act case, the Redbox or the Retailer is acting as an intermediary to collect the tax that's actually owed from the end user and remit it to the state. That's not what we have here. So we don't have $1.389 million that was collected from end users of these DVDs. That money is actually Redbox's money that it paid on the DVDs itself. But say a taxpayer figures out that he overpaid his taxes from 1987 on state income tax. He can't go back to the state and say, today I want my taxes back, can he? That's correct. So why doesn't the statute of limitations apply in this case? Because we don't have a situation here where the taxpayer has paid incorrectly on these use tax several years in a row and then says, oh, wait, I should have never been paying use tax on these. I need to go file my claim for credit. What we have here is two department-initiated audits that occurred for these specific time periods. And those, the audit, so the department came in. That's the legal question before us is when that statute applies and whether it applies in this situation, correct? That's correct. And Redbox's argument is that during the audit, during the audit of the first tax period, claims were going, the department and Redbox were making claims. And at the conclusion of that audit, Redbox overpaid its taxes. It paid $233,307 instead of receiving a credit of $1.389 million. And so when it made that payment, that begins the statute of limitations in Section 21. That starts the three-year period. And so under Section 21, Redbox had until February 28, 2016 to file a claim. Does that support that section that says that starts the statute of limitations at that point in time? Your Honor, what we're looking at is Sections 19 through 21. And Section 19 provides that if it shall appear any amount of tax or penalty or interest has been paid in error here under to the department by the purchaser, whether such amount is paid through mistake of fact or error in law, and it lists the Sales Tax Act, the department, such purchaser may file a claim for credit with the department in accordance with Section 6A, 6B, 6C, and 6D of the Retailer's Occupation Tax Act. Now, Section 6 of the Retailer's Occupation Tax Act, again, then provides that if a – that contains the three-year statute of limitations, which provides if it is determined – or if it is determined that the department should issue a credit memorandum or refund the department may first apply that amount thereof against any tax or penalty interest due to or due under this or the other Sales Tax Act. If no tax or penalty or interest is due – and this is key because this is distinguishable from Section 22 of the UTA, but Section 6 of the ROTA says if no tax or penalty or interest is due and no proceedings – to determine whether such person is indebted to the department for tax or penalty or interest, the credit memorandum shall be issued to the claimant. However, as to any claim for credit or refund with the department, no amount of tax, penalty, or interest erroneously paid more than three years prior shall be credited or refunded. And then that parallels Section 21 of the UTA, which provides that as to any claim for credit or refund filed with the department on and after January 1st, on or before January 30th of any given year, no amount of tax or penalty or interest erroneously paid more than three years prior to such January 1 shall be credited or refunded. So that – that is – it's that interplay of statutes that – that governs the statute of limitations in this case. Now, Section – looking at what happened in this case, at the conclusion of the audit, the taxpayer could have filed 42 separate amended returns. That is essentially what – what could have happened, but Section 4 of the ROTA allows, for efficiency's sake, for the department and taxpayer to – for the department to issue a correction of tax. And this correction of tax is the EDA 105-R form, which essentially says instead of taxpayer filing 42 amended returns, which would show all the different monthly adjustments that were made in accordance with the audit, there's one final form, one final tax liability, which is the EDA 105-R form that combines all of those and gives one number. So the – so the taxpayer and the department know it's one number. It's not filing 42 amended returns. But that form in and of itself is representative of those 42 amended returns. And an amended return under Section 4 of the ROTA, an amended return starts a three-year period for the department to go back and audit that amended return. So the amended return filing would again – the EDA 105-R, just as an amended return would, starts that three-year statute of limitations period. What about this waiver, this extension agreement? What's the effect of that if an extension agreement is signed until July of 2013? So the waivers that are signed, what they do is they allow the audit to be conducted openly between the taxpayer and the department. So they're waiving – the taxpayer is waiving the statute of limitations for the audit – for the audit months so they don't run during this audit. And the department is waiving claims for credit for these months. So what the waiver does is it allows the taxpayer and the department to come to that final number in the EDA 105-R. So it's looking at your tax liability for a given month during this period or a series of months. In this case, it was from January 2007 through June 2010. And you're waiving the statute of limitations for running for any of those months as you determine tax liability. So that way, the statute of limitations, say, for the six-month period of January 1, 2007 to June 1, 2007, that won't run in the middle of the audit before you've determined these issues. So it's a way for the taxpayer and the department to make sure that the taxpayer is paying the correct amount of tax and the department is collecting the correct amount of tax without having to worry about focusing on six months at a time. They can look at the entire audit period. But what the statute doesn't allow and what those waivers didn't do is restrict the three-year statute of limitations for filing a claim. So the three-year statute of limitations began to run on February 28, 2013. The waivers that issue in this case only dealt with the tax period that was being audited from January 1, 2007 through June 1, 2010. Even if this court looks at the statute of limitations and believes it is run, the language that was highlighted in Section 6 of the ROTA compared with Section 22 of the UTA shows that the UTA provides a mechanism for taxpayers to receive a credit during an audit as what was happening in this case. Specifically, Section 22 of the UTA says it begins the same way as Section 6 of the Retailer's Occupation Tax Act. It is determined that the department should issue a credit or refund under this act. The department may first apply the amount thereof against any tax or penalty or interest due here under. If, however, proceedings are pending to determine whether or not any tax or interest is due under this act, and that's what was happening here because Red Box was still under audit for the second audit period, the department may withhold issuance of the credit or refund pending that final disposition. The balance, if any, of the credit shall be refunded or issued to the person entitled here to. What Section 22 does is it allows, in the situation here where the department and taxpayer are already meeting due to a department-initiated audit and trying to come to the right amount of tax that's owed, Section 22 allows them a mechanism to do that. And this makes sense. The department's job is to collect the right amount of tax. The department and taxpayer are already in discussions for what's owed, and Section 22 allows these type of offsetting claims in situations where an audit is ongoing. The General Assembly could have included, could have mirrored Section 6 of the Retailer's Occupation Tax Act and included the statute of limitations right there within this section, but Section 6 only applies when proceedings are not pending. What we have in this case is an audit. The proceedings are pending, and the language of Section 22 is clear that in cases of offsetting claims like we have, the department and taxpayer, the taxpayer can receive a credit that offsets these claims. When the money is going back and forth and the department and taxpayer are trying to come to the right number, this statutory scheme makes sense. And finally and briefly, the tax in this case is being applied in an unconstitutional manner because of the way, manner in which the department is granting the credit. In this case, a claim for credit for $1.6 million was requested. The department's position is that it can only refund the $233,000 because that's the only amount that Redbox has paid. But had Redbox made more mistakes during the 2007 to 2010 period before it was audited and instead had a $600,000 tax liability, it would have been able to take a larger credit from this than was granted by the department. And so the tax needs to be applied uniformly. And if a credit is due in this case, which the department, by issuing the $233,000, has said, the credit should be paid, it should be paid in full. And so the department's purpose in conducting this audit was to come to the correct amount of tax that Redbox owes. That's the goal of an audit. That's the purpose of the department. In this case, everybody agrees that the first audit should have come back with an EDA 105R that showed Redbox was due a refund of $1.389 million. Everybody agrees to that, but it didn't happen. However, within three years, Redbox asked for credit to correct this error, and under the statute of limitations, and especially under Section 22, Redbox should be granted this refund in full. Thank you, Counselor. Thank you. Thank you. Thank you. Thank you. Good afternoon, and may it please the Court. You might want to speak up because we are recording. Thank you. Sorry about that. Good afternoon, and may it please the Court. Counsel, I'm Assistant Attorney General Caleb Rush. I'm here on behalf of the Department of Revenue. Redbox's tax returns were prepared by Redbox, not by the Department of Revenue. For years, it mistakenly paid use taxes on licensing agreements. The Department audited Redbox, but the audit didn't examine all of Redbox's taxes, and it wasn't about use tax for licensing agreements. It was looking at use tax on some equipment and other tangible property. During a second audit, Redbox asked the Department about use tax for licensing agreements. The Department gave Redbox the correct information, so Redbox filed a refund claim. The Department granted the refund claim in the full amount of Redbox's erroneous tax payments that were made within the three-year statute of limitations. On appeal, Redbox has various theories for why the Department should give Redbox a refund for taxes it paid going back five-plus years before it filed its refund claim. None of these theories is supported by what the law actually says. I'd like to start with a few basic principles. Tax refunds can only be made pursuant to an authoritative statute, and tax refund statutes are interpreted strictly. That's the Citibank case. Statutes of limitations are also interpreted strictly. That's the Dow Chemical case. And exceptions will not be applied. That's the American Airlines case. And the Use Tax Act must be interpreted as a whole. That's, again, the American Airlines case. This is also just the basic principles of statutory interpretation. For instance, we cited the Gillespie Community Unit School District case for that in our brief. In its reply brief, Redbox claims that American Airlines does not apply here because it did not involve a Department-initiated audit or it did not involve offsetting claims. But in its opening brief, I think that's pages 16 and 17, Redbox relied heavily on the reciprocity principle stated in American Airlines. More important than that, there's no legal authority that suggests it makes a difference how an audit was initiated or whether claims were offset when looking at these basic principles relating to statutory interpretation, statutes of limitations, and how tax refunds work. For instance, American Airlines, a case about a taxpayer-initiated audit, heavily cites Dow Chemical, which is a case about a Department-initiated audit, and there's no suggestion in the case that the difference matters. Incidentally, just to be clear, in this case, claims were not offset anyway. Now, also in its reply brief, at page 9, Redbox argues that Citibank doesn't apply here because Citibank, a Supreme Court case about the Use Tax Act, involved claims by third parties. But that doesn't change the basic principles. When the Citibank case from our Supreme Court says that tax refunds may only be issued pursuant to an authoritative statute, and when it says that tax refund statutes are interpreted strictly, it's not saying that that's only about when a third party asks for a tax refund. And there's no explanation from Redbox why that basic principle ought to be cabined to that type of circumstance. With these principles in mind, let's talk about what the tax refund statutes for the Use Tax Act say. And we're talking about sections 19, 20, 21, and 22 of the Use Tax Act. And you can see that when you read the Use Tax Act, or American Airlines explicitly says these sections of the Use Tax Act govern tax refunds under the Use Tax Act. So what do they say? 19 says, if there's been an overpayment, or if you believe there's been an overpayment, you may file a claim. And there's a cross-reference to the Retailers' Occupational Tax Act, the ROTA, Section 6, which talks about Section 6, 6A, 6B, talk about claim filing procedures. Section 20 is about how the Department should determine a claim, and it provides for protests of results. Section 21 says there's a three-year statute of limitations. And I appreciate that Your Honor asks to have the section read. I won't take your time re-reading it, but I want to emphasize the operative terms in the three-year statute of limitations, which is three years after an amount of tax is erroneously paid. So the statute of limitations is triggered by a tax payment. Whenever a taxpayer pays an amount of tax, that starts the three-year statute of limitations on that tax payment. Now I want to mention a side issue here that's not super important, but it's just in the statute. The three-year statute rules in six-month intervals. So it's not a date-by-date statute of limitations. It looks at payments made between January 1st and June 30th, and then that statute of limitations hits on June 30th, three years later. But the real point is that it's a three-year statute of limitations, and it's triggered by an erroneous payment of an amount of tax. Then we have Section 22. Since Red Box relies heavily on Section 22, I would like to refer to that text a little bit more. Section 22 starts with if. If it is determined that the Department should issue a credit or refund, Section 22 begs the question, how do you determine whether a tax or refund should be issued? Section 22 does not answer that question. That question is answered by the rest of the statutory schemes, specifically Sections 19, 20, and 21, including Section 21, the statute of limitations. If it is determined that the Department should issue a credit or refund, then the Department may first offset that against a liability. Fine. We're just talking about standard administration. And if proceedings are pending to determine whether or not a tax or penalty or interest is due, then the Department can wait until that proceeding is done, and then issue the correct net amount of the credit or refund. These provisions about offsets and about if a proceeding is pending, they don't create new rights. They don't erase the statute of limitations. What they do is they protect the state from issuing a refund immediately to somebody who already has a tax liability, or if there's proceedings pending and they may be determined to have a tax liability. Section 22 does nothing to help a taxpayer file a tax refund claim. And I'm simply talking about the plain text of the statute here. That's in addition to the fact that the immediately previous section has the statute of limitations in it, in addition to the fact that American Airlines says that the act as a whole must be read together, which obviously is a basic principle of statutory interpretation, in addition to the fact that American Airlines also specifically says that sections 19 through 22 govern tax refunds under the UTA. Okay. So what do these four sections tell us about how we apply the statute of limitations in this case? It tells us that we focus on amounts of taxes erroneously paid. We look at when those payments are made. And up to three years later, a claim is timely. More than three years later, keeping in mind the six-month rule, or the six-month accrual, if you want to look at it that way. Beyond that, the claim is untimely. Now, I mentioned before how the claims section, section 19, cross-references the ROTA, which contains more details about filing of claims. The ROTA also contains a method for extending the statute of limitations. There can be a mutual agreement. And if there's a written mutual agreement, and this is in ROTA sections 4 and 6, then the deadline can be extended. In fact, there were extensions in this case. And the last extension, which Redbox signed and fully knows the contents of, does not claim not to know what it signed. The last extension ended in June 2013. Redbox's claim was filed in February of 2016. The payments at issue, so this extension provision does not render this tax refund claim timely. What we're talking about here are payments that were made at the latest, July 2010. We're talking about the 2007 to 2010 tax period. The last of these payments, by the stipulation states, the last of these payments were made in July 2010. Now, it so happens there was an audit, and in February of 2013, the department, looking at just part of Redbox's taxes, says, you know, we looked over this part of your taxes, and it turns out there's $230-some-thousand more owed. Redbox pays that, February 2013. June of 2013, the statute of limitations extensions run out. Redbox has not filed a claim. Now, the last of these tax payments, other than the $230-some-thousand in February 2013, other than that, all these tax payments were made July 2010 or earlier. So, when did the three years for that run out? That would have been December of 2013. Still no refund claim from Redbox. Redbox was still under the mistaken impression that it should be paying these taxes for these licensing agreements. It had not yet asked the department about this, and the audits did not happen to go into that part of Redbox's taxes. When there's a second audit, Redbox inquires. The department gives Redbox the correct information, and Redbox says, oh, we want a whole bunch of taxes back. We're going to file a refund claim. That's perfectly understandable, and that's perfectly fair. That's how the process should work. The process also has statutes of limitations in it that must be applied equally to everybody. So, when a tax refund claim does get filed in February of 2016, you go back three years to 2013, February 2013. There's only one erroneous tax payment that's within that statute of limitations. The department returned that without litigation. The department also refunded to Redbox. This is part of the second audit period, which is not before the court today, but the second audit period, which was 2010 to 2013, the department also, without litigation, refunded to Redbox $4.8 million. But what the law prohibits the department from doing, and we're talking about Section 21 of the Use Tax Act and Section 6 of the ROTA, but what the law prohibits the department from doing is refunding back an erroneous tax payment that was made more than three years before a refund claim form was filed. And that's what this appeal is about here. Seeking the refund of erroneous tax payments made five or more years before the refund claim was filed. Redbox has three different arguments for a county-to-county constitutional argument, which I'll get to later. The three statutory arguments for exception to this three-year statute of limitations. The first one is about some legal effect of the February 2013 payment. The second argument is some legal effect of the first audit or the first audit results, which also happened in February 2013. The third statutory argument from Redbox is about Section 22 of the Use Tax Act. The problem with each of these arguments is that they don't, they're not consistent with the basic principles that I just discussed about strict interpretation of statute of limitations, strict interpretation of tax refunds, no implied extensions of statutes of limitations. And the other fundamental problem with these three arguments is they don't actually follow the text of the statutes anyway. If I may just try and go through these arguments. Yes, Your Honor. Go ahead. So about the February 2013 tax payment. It's absolutely relevant and it did have a legal effect as to that tax payment. When Redbox made that tax payment in February 2013, that began the statute of limitations for that tax payment, which was in the amount of 200-some thousand dollars, 230-some thousand dollars, I think. But what it did not do, which is what Redbox argues, what it did not do is it did not resurrect the statute of limitations for any erroneous tax payments that were made earlier. And as stipulated, those payments were made in July 2010 or earlier. Redbox, by the way, has forfeited this argument. Redbox makes this argument in its opening brief to this Court that the February 2013 payment in itself amounted to a net overpayment of $1.6 million because if it had been aware of its mistake at the time or if the Department had been auditing all of Redbox's taxes instead of one portion, then they would have figured out that Redbox at the time was entitled to a refund. So the argument that that 2013 payment told the statute of limitations somehow for other payments or that it should be viewed as a net overpayment of $1.6 million when they paid $230,000, that argument does not appear in Redbox's brief to the Tax Tribune. This is in pages 65 to 70 of the record. In their reply brief at page 6, Redbox says they made this argument. Or I think what Redbox specifically says is that they did argue to the Tax Tribunal that their claim was timely. Yes, we agree that Redbox made arguments to the Tax Tribunal that their refund claim was timely. We disagree that Redbox made any argument about the legal effect of the February 2013 payment, about that tolling the statute of limitations or about how that should be viewed somehow as a net overpayment of $1.6 million. And we address this in our brief at page 16. Moving beyond this question of forfeiture of the argument, the argument is simply not correct. Nothing in the statutes says that one amount of tax erroneously paid resurrects the statute of limitations for past, now stale overpayments of taxes. If this theory were correct, then any tax payment could conceivably start the statute of limitations for potentially limitless past tax overpayments. That's not how statute of limitations works. And by the same token, if this theory was right, then an erroneous tax refund by the government could start a potentially limitless statute of limitations for the government to impose tax liability. That would not make any sense either. And nothing in the statutes suggests that the legislature intended this. By the way, the appellate court, I believe it was the first district, rejected a version of this argument in the Dow Chemical case, looking at 224 Illinois at 3rd, at page 266. Now, the Dow Chemical case was interpreting the Income Tax Act, very similar provisions in the Income Tax Act. And Dow Chemical argued it was entitled to credit now for an untimely past overpayment. And that argument was rejected. On the second argument, the statute of limitations being somehow told by the first audit or by the audit results, nothing in the statute says that. Again, the statute says that the Use Tax Act says that the statute of limitations starts to run at the erroneous payment of an amount of tax. Does it talk about signing on reports? Thank you, counsel. I thank the court for its time. We ask the court to affirm the decision of the tax tribunal. Thank you. Thank you. Thank you. Picking up on the Dow Chemical case where counsel left off, that's interpreting section 909 of the Income Tax Act. And it's that particular section actually contains the statute of limitations. Unlike, and this is how counsel distinguished the cases mentioned, American Airlines and Dow, unlike section 22, section 22 does not contain that type of language that is contained in the Dow Chemical case. And in American Airlines, they didn't address section 22. What was not present in those cases were department-initiated audits with offsetting claims. Now, counsel mentioned that the only issue they were looking at was use tax per equipment. When the department initiates an audit, it puts all tax issues at issue between the taxpayer and the department. So when the first audit was initiated, all taxes were reviewed. And the department's objective, and we've cited cases, the department's goal is to collect the right amount of tax when it issues this audit. So it's not like an audit can be opened just to review machine use and machine purchases. Once that audit's issued, all tax issues are open to red dots and to the department. Now, counsel stated on multiple occasions that section 21 is limited to that tax. He said that they were allowed to refund that overpayment, that being the overpayment of the $233,000. But that's not contained within the statutes. What section 19 discusses is when an overpayment is made, a taxpayer can make a claim for credit. There's nothing in there that limits it to that erroneously paid amount. I thought 19 was where it said three years. Section 21, Your Honor, is where it says three years. Section 19 provides the taxpayer the means in which to file the claim for credit. So Redbox made an erroneous payment on February 28, 2013, and that position has been consistent with Redbox. We cited it in the brief, and this court has briefings before the tax tribunal as an argument for the tax tribunal. It's always been Redbox's position that it made a payment in error on February 28, 2013, and that started the statute of limitations period to run on that overpayment. And what Redbox did is they filed a claim for credit within three years of that overpayment and said we paid – we overpaid our taxes and we believe were owed $1.6 million credit. And they were correct. They were owed $1.6 million credits. The department agrees, but their position is that they can only pay that $233,000. With regards to the limiting principle in Section 22, the language in Section 22 of the UTA tracks Section 6 of the Retailer's Occupation Tax. Both of them start if it is determined that the department should issue a credit or refund under the act. And counsel for the department has indicated that there are steps that you do. So Section 19 allows you to file a claim for credit, and then Section 21 acts to bar that credit, and you go in order. Same with Section 6 of the Retailer's Occupation Tax Act. The first step is whether or not the department should issue a credit or memorandum or refund. It's only after that determination that any claim for credit or refund is barred by the statute of limitations. Section 22, if the department determines that it should issue a credit and proceedings are pending, then the statute of limitations doesn't operate to prevent payment. In cases of offsetting claims where proceedings are pending, the taxpayer is allowed to claim this credit. And I urge the Court to compare Section 6 of the ROTA to Section 22 of the UTA, where Section 6 addresses when no proceedings are pending, Section 22 addresses when proceedings are pending, because they are different. And finally, the department – Red Rocks did cite American Airlines for the notion that reciprocity exists between the department and taxpayer, because this is true. The way the department interprets Section 22, it only benefits the department. It does not maintain the reciprocity that is meant to be between the taxpayer and the department to make sure that the taxpayer is paying and the department is receiving the correct amount of tax. Thank you. Thank you, counsel, for your arguments. The Court will take this matter under advisement to render a decision in due course.